EVANDER, J.
 

 Winter Park Imports, Inc., d/b/a Lexus of Orlando (“Lexus of Orlando”) filed a third amended complaint against Southeast Toyota Distributors, LLC., JM Family Enterprises, Inc., JM Auto, Inc., and JM Auto II, Inc., seeking actual and treble damages, injunctive relief, and attorney’s fees based on alleged violations of the Florida Dealer Act, sections 320.60-70, Florida Statutes (2005). In a thorough and well-reasoned order, the trial court granted summary final judgment in favor of the defendants. We affirm.
 

 Since 1989, Lexus of Orlando has operated a dealership in Orlando pursuant to franchise dealership agreements with Toyota Motor Sales, USA, Inc. (“TMS”). These agreements recognized TMS as the exclusive distributor in the continental United States for Lexus products manufactured by Toyota Motor Corp. (“TMC”). Significantly, these agreements did not award Lexus of Orlando an
 
 exclusive
 
 dealership in the Orlando area.
 

 Section 320.645 of the Dealer Act prohibits a motor vehicle manufacturer or distributor (or parent, subsidiary, or affiliated company of a manufacturer or distributor) from owning or operating a motor vehicle dealership in this state. Section 320.645(4) contains a specific exception to this prohibition that expressly permits distributors to own dealerships that do not sell the same line-make of the vehicle that the distributor distributes. The line-make of a vehicle is its brand or trade name.
 
 See
 
 § 320.60(14), Fla. Stat. (2005). Thus, while a manufacturer is prohibited from owning or operating any type of dealership, a distributor is only prohibited from owning a dealership with the same line-make vehicles that it distributes.
 

 Appellees are affiliated companies in that JM Family Enterprises, Inc. is the parent company of Southeast Toyota Distributors (“Southeast”), JM Auto, and JM Auto II. JM Auto operates a Lexus deal
 
 *635
 
 ership in Margate, Florida, and JM Auto II was seeking to establish a Lexus dealership in Orlando.
 

 In its third amended complaint, Lexus of Orlando contended,
 
 inter alia,
 
 that JM Auto and JM Auto II were prohibited from operating a Lexus dealership because their affiliated entity, Southeast, fit within the statutory definition of a motor vehicle manufacturer and/or a Lexus distributor.
 
 [1]
 
 The trial court properly rejected these arguments.
 

 Pursuant to its Vehicle Processing Agreement with TMS, Southeast processes Toyota and Lexus vehicles, which are delivered to it at its facilities in Jacksonville, Florida, and Commerce, Georgia. Southeast’s processing responsibilities include inspecting and washing the vehicles, attaching federally-mandated labels, and installing accessories such as entertainment systems, spoilers, wind deflectors, upgraded wheels and rims, tow hitches, and floor mats. These actions do not, as Lexus of Orlando argues, make Southeast a “manufacturer.” Section 320.60(9) provides that unless the context otherwise requires, a manufacturer is one who “manufactures or assembles motor vehicles or who manufactures or installs on previously assembled truck chassis special bodies or equipment which, when installed, form an integral part of the motor vehicle and which constitute a major manufacturing alteration... .”
 

 As the trial court observed, to “manufacture” means “to make (as raw material) into a product suitable for use,” and “assemble” means to “fit together various parts of, so as to make into an operative whole.” Webster’s 3rd Int’l Dictionary 131, 1378 (1993);
 
 see also Sieniarecki v. State,
 
 756 So.2d 68 (Fla.2000) (plain and ordinary meaning of word can be ascertained by reference to dictionary). In the present case, the undisputed facts establish that Southeast does not make anything from raw materials, and does not take a collection of component parts and assemble them to produce a whole product. Indeed, the vehicles that arrive at Southeast’s facilities are fully operable. Furthermore, Southeast does not install any equipment (whether to a previously assembled truck chassis or otherwise) that constitutes either an integral part of the motor vehicle or a major manufacturing alteration. Taken to its extreme, the argument that installation of accessories renders one a manufacturer means that any dealership that installs accessories is operating illegally.
 
 [2]
 
 A court should reject a statutory interpretation that would yield an unreasonable conclusion or absurd result.
 
 State v. Iacovone,
 
 660 So.2d 1371, 1373 (Fla.1995).
 

 We further reject Lexus of Orlando’s contention that because of the major role Southeast plays in the delivery of vehicles to dealers, it falls within the Dealer Act’s definition of a distributor. Section 320.60(5) provides that unless the context otherwise requires, a distributor is one “who, in whole or in part, sells or distributes motor vehicles to motor vehicle dealers or who maintains distributor representatives.” The record reflects that after the completion of its processing responsibilities, Southeast loads the vehicles on trucks for delivery to dealers. Being a significant actor in the delivery chain does not make one a motor vehicle distributor. If it did, the trucking company that transported the vehicles would be a distributor. Obvious
 
 *636
 
 ly, that was not the intent of the Legislature.
 

 The key factors in determining whether one is a distributor clearly supports the trial court’s conclusion that Southeast is not a Lexus distributor. It is TMS, not Southeast, that makes all allocation determinations,
 
 ie.,
 
 the number and type of Lexus vehicles to be delivered to each dealership. It is TMS, not Southeast, which holds title to the vehicles until sold to a dealership. It is TMS, not Southeast, which is in privity with both the manufacturer and the dealerships. Indeed, the franchise agreement under which Lexus of Orlando operates recognizes TMS as the exclusive distributor of Lexus vehicles in the continental United States.
 

 Alternatively, Lexus of Orlando argues that Southeast is a Lexus distributor because it “maintains distributor representatives.” The undisputed facts establish otherwise. Pursuant to its contract with TMS, Southeast permits TMS to utilize a small office located in Southeast’s facilities. The primary function of the few TMS employees who utilize this office is to help ensure that Southeast complies with its contractual obligations to TMS. These employees act exclusively as agents for TMS. As the trial court observed, “the legal connotation of the word ‘maintain’ is to ‘support someone financially’.” Here, there was no record evidence that Southeast provided financial support to, or controlled the activities of, the TMS employees who utilized offices in the space leased by TMS.
 

 We reject, without discussion, the other arguments raised by Lexus of Orlando.
 

 AFFIRMED.
 

 TORPY and LAWSON, JJ., concur.
 

 [1]
 

 . Southeast is a distributor of Toyota line-make vehicles. There is no claim that Southeast's distribution of these Toyota line-make vehicles prohibits it (or an affiliated company) from owning or operating a Lexus dealership.
 

 [2]
 

 . Notably, Lexus, of Orlando installs many of the same accessories that Southeast installs.